UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CARLTON WRIGHT,                          )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        No. 1:23-cv-01363-JRS-TAB
                                         )
DUNN, et al.,                            )
                                         )
                    Defendants.          )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Carlton Wright, who is incarcerated by the Indiana Department of Correction, alleges in this case that defendant Officer Everett Dunn called him a snitch and sexually harassed him. He further alleges that defendants Michael Krul, Roy Davis, Voyle Gard, and Sammy Davis failed to prevent this sexual harassment and that Mr. Davis conducted an interview with Mr. Wright about this incident in a public setting. The defendants have moved for summary judgment on these claims. For the reasons below, that motion is **granted in part and denied in part**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A

1

court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
### Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. Parties

At all relevant times, Mr. Wright was confined at New Castle Correctional Facility ("NCCF"). Dkt. 1 at 6. Before he was at NCCF, Mr. Wright was housed at Wabash Valley Correctional Facility and, in 2012, participated in a reality TV program called "Lockup." Dkt. 63-1 ¶ 6-7.

Everett Dunn worked as a Correctional Officer at NCCF. *Id.* ¶ 3. Michael Krul was a Lieutenant, Roy Davis was a Major, and Voyle Gard was a Captain. Dkt. 63-2 ¶ 3; dkt. 63-3 ¶ 3;

dkt. 63-5 ¶ 3. Sammy Joseph was a Lead Investigator with investigations and intelligence. Dkt. 63-4 ¶ 3. Michael Denney worked as a PREA[1] Investigator at NCCF. Dkt. 63-9 ¶ 2-3.

**B. Snitch**

Mr. Wright has presented the affidavit of inmate Andrew Schafer, who states that, on March 18, 2021, Officer Dunn confronted him in the shower in the segregation unit and told him Mr. Wright is a snitch. Dkt. 70 at 6 (Schafer Aff.). Mr. Schafer responded that people just say that because Mr. Wright was "on that locked up show when he was at Wabash." *Id.* at 7. Officer Dunn replied that Mr. Wright had been snitching on people at Wabash. *Id.* Officer Dunn also told multiple other inmates that Mr. Wright was a snitch. *See* dkt. 70 at 23-24 (Rosa Aff.) (stating that when he was on the O-unit between June and October of 2020, he overheard Officer Dunn loudly telling other inmates that Mr. Wright is a snitch). Mr. Wright filed a grievance about the March 18 incident between Officer Dunn and Mr. Schaefer and asked to be kept separate from Officer Dunn. Dkt. 70 at 51.

Officer Dunn denies telling other inmates that Mr. Wright is a snitch. Dkt. 63-1 ¶ 10. He explains that did not work in segregation and he was only assigned to the O Unit, not segregation. *Id.*, ¶ 12. Officer Dunn goes on to explain that NCCF does not allow free-range access to all areas of the prison; and he had no orders to be in segregation on March 18, 2021, and therefore wasn't there that day. *Id.* ¶ 13. Mr. Wright explains, however, that the segregation unit for the Annex Building at NCCF is located on the Three Range, which is located inside the O unit and therefore Officer Dunn was on that unit regularly. Dkt. 70 at 2 (Wright Aff.); dkt. 70 at 22 (Rosa Aff.) (stating that officer Dunn would come on the three pod of the O-unit regularly for various reasons, including to get ice and run outside recreation time).

---

[1] PREA refers to the Prison Rape Elimination Act.

In June of 2021, Mr. Wright had an altercation with another inmate from Mr. Wright's range on the recreation pad. Dkt. 70 at 42. Mr. Wright contends that the other inmate started the fight because Officer Dunn was spreading rumors that he is a snitch. Dkt. 70 at 11.

**C. Strip Search**

On April 21, 2021, Officer Dunn was part of the CERT Team of approximately 30 officers doing a shake-down of the M-Unit, where Mr. Wright was housed at the time. Dkt. 63-1 ¶ 15. During this shake-down, Mr. Wright affirms that officer Dunn strip searched[2] him in the shower. Dkt. 70 at 14. According to Mr. Wright, Officer Dunn said to him, "yeah you want to grieve me you little punk." Dkt. 70 at 59. Once Mr. Wright was naked in the shower, Officer Dunn directed him to lift his private area in front and then to turn around and squat. Dkt. 70 at 59. Mr. Wright affirms that Officer Dunn said the following as he did so:

> 26 During the strip search conducted by ofc Dunn on 4-1-2021 in the shower, ofc Dunn said several inappropiate sexual related comments to the plaintiff, which consisted of... " Yeah, that's right, spread'em open wider bitch, and let me see how tight you really are". and also, "Damn dog, I thought that black guys are suppose to have bigger cocks then that". See Exhibit, W pg #4

Dkt. 70 at 14. As Officer Dunn was returning Mr. Wright to his cell, he said "you really want to grieve me still…" and threatened him if he did not rescind the grievance. *Id.* at 60.

Lieutenant Krul affirms that he witnessed Officer Brandon Worth, not Officer Dunn, search Mr. Wright's clothing. Dkt. 63-2 ¶ 8-10. In addition, Major Davis was a supervisor and was present

---

[2] Officer Dunn denies being the officer who performed the search and disagrees with the characterization of the search as a strip search, stating, "In instances like the one described here, an offender is locked in the shower alone and advised to remove their clothing and hand it through the port to the officer monitoring the search so that that officer can search the clothing and give it back to the offender." Dkt. 63-1 ¶ 24.

during the shakedown and affirms that he did not observe any "strip searches." Dkt. 63-3 ¶ 7. He

states that Officer Dunn's involvement included cell searches only. *Id.* ¶ 8.

Major Davis, Lieutenant Krul, and Mr. Joseph all affirm that they were never aware of any

reason for Mr. Wright to be kept away from Officer Dunn. Dkt. 63-2 ¶ 12; dkt. 63-3 ¶ 9-10; dkt.

63-4 ¶ 10. Captain Gard never witnessed any sexual harassment, and a review of the day and night

shift roster reveals that he did not work that day, and instead, a caseworker named "Courtney Gard"

was working. *Id.* ¶ 9. Dkt. 63-8 (Night Shift Roster).

### D. PREA Report

Mr. Wright made a PREA report to NCCF staff about his allegations that Officer Dunn

harassed him during the strip search. Dkt. 70 at 29-31. According to the investigation report, video

of the incident "revealed no evidentiary value." *Id.* at 30. Investigator Denney concluded:

> Based on the preponderance of the evidence, the investigation determined the allegation did not meet the definition of sexual harassment under PREA and was therefore referred to OPR for determination of a violation of GEO'S policy 3.2.2; Standards of Employee Conduct.

*Id.* at 28.

Mr. Wright alleges that Mr. Denney violated his rights by interviewing him in a public

hallway on May 21, 2021. Dkt. 1 at 19. Mr. Denney affirms that he conducted interviews for PREA

matters in his office or the Annex's designated room. Dkt. 63-9 ¶ 6. He explains that the designated

room is isolated from anywhere inmates could access, has a privacy curtain so inmates could not

see who was inside, and inmates are brought to the room discreetly. *Id.* ¶¶ 10-12. Although Mr.

Denney cannot recall ever having interviewed Mr. Wright, he affirms that "he knows for a fact

that he never spoke to him in any hallway and never about his PREA allegations." *Id.* ¶ 16-17.

According to Mr. Denney, no such big hallway or main hallway exists as alleged in the Complaint.

5

*Id.* ¶ 18. Further, the "Protection from Retaliation Log" shows that Mr. Wright refused the May 21, 2021, interview. *Id,* ¶ 21; dkt. 63-10. In response to the motion for summary judgment, Mr. Wright explains that the interview took place in a "multipurpose room,"[3] which he contends has large glass windows through which passersby by can see and hear what is going on in the room. Dkt. 70 at 33.

### III.
### Discussion

The defendants seek summary judgment on each of Mr. Wright's claims, as discussed below.

### A. Snitch

Mr. Wright contends that Officer Dunn told other inmates that he is a snitch in violation of his Eighth Amendment rights. Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); s*ee also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010).

Officer Dunn denies telling other inmates that Mr. Wright is a snitch and suggests that, if he discussed Mr. Wright's portrayal in the TV show Lockup as a snitch, such information was well-known in the Facility and therefore such discussion did not amount to an Eighth Amendment violation. Mr. Wright has designated contrary evidence – that Officer Dunn was telling other inmates that he was a snitch and insisting that this information was not related to his role in Lockup. Dkt. 70 at 6. Because there is a dispute of fact regarding whether Officer Dunn was spreading

---

[3] Mr. Wright also refers to this room as a "utility room" in his briefing.

6

rumors that Mr. Wright is a snitch, Officer Dunn is not entitled to summary judgment on this claim. *Cf. Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014) (Prison officials may be found liable where it can be proven they knew an inmate "faced a significant risk of harm from a 'particular vulnerability' and exposed him to that risk anyway.").

### B. Sexual Harassment

Mr. Wright alleges that Officer Dunn sexually harassed him during the search at issue in violation of his Eighth Amendment rights and did so in retaliation for filing grievances.

### 1. Eighth Amendment

The Eighth Amendment's prohibition of cruel and unusual punishment protects prisoners from conditions of confinement that "involve the wanton and unnecessary infliction of pain[.]" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "[S]imple verbal harassment," standing alone, typically does not support a claim under the Eighth Amendment. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409, 423 (7th Cir. 2020). However, verbal abuse and harassment by prison guards, including "calling an inmate 'derisive terms' like 'punk, fag, sissy, and queer,' thereby 'increas[ing] the likelihood of sexual assaults on him,' "may well rise to the level of cruel and unusual punishment." *Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015) (quoting *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015)); *see also Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019) ("verbal harassment can rise to a level that violates the Eighth Amendment"); *Courtney v. Devore*, 595 F. App'x 618, 619 (7th Cir. 2014) (The Eighth Amendment prohibits "harassment unrelated to prison needs") (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)).

Officer Dunn denies harassing Mr. Wright. In fact, he denies searching Mr. Wright at all. And a jury might believe him. Indeed, other evidence supports this denial. But a reasonable jury

who believed Mr. Wright's version of the events, that Officer Dunn made sexually derogatory statements to him while strip searching him, could conclude that this harassment rose to the level of the wanton and unnecessary infliction of pain under the Eighth Amendment. Officer Dunn therefore is not entitled to summary judgment on this claim.

### 2. Retaliation

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

First, Officer Dunn contends that there is no evidence that Mr. Wright participated in First Amendment activity, but Mr. Wright has presented evidence that he filed a grievance against Officer Dunn for allegedly calling him a snitch. Dkt. 70-14, 51. Next, Officer Dunn argues that Mr. Wright did not suffer deprivation likely to deter further First Amendment activity because he did not perform the strip search at issue. But, as already discussed, Mr. Wright has designated evidence that Officer Dunn was the one who performed the search. Dkt. 70 at 14. Whether allegedly retaliatory conduct would "deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test, *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020), and the standard "does not hinge on the personal experience of the plaintiff," *Holleman v. Zatecky*, 951

F.3d 873, 880 (7th Cir. 2020). A reasonable jury could conclude that, if proven, verbally harassing a person while overseeing a strip search could deter future First Amendment activity.

Finally, "[t]he motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. Here, Mr. Wright has designated evidence that Officer Dunn referred to his grievance about calling him a snitch while conducting the search. Dkt. 70 at 59. This is enough to allow a reasonable jury to conclude that Officer Dunn performed this search in a harassing manner because Mr. Wright filed a grievance against him. Officer Dunn therefore is not entitled to summary judgment on Mr. Wright's retaliation claim.

### 3. Failure to Protect

Mr. Wright alleges that Major Davis, Captain Gard, Lieutenant Krul, and Mr. Joseph should be held liable for their failure to intervene in Officer's Dunn's actions during the search. Prison officials incur liability for the breach of the duty to protect inmates from harm when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To succeed on a claim for failure to protect, Mr. Wright must show that (1) the defendants were aware of a substantial risk of serious injury to him, and (2) they acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

Major Davis, Lieutenant Krul, and Mr. Joseph all deny any awareness of Officer's Dunn's actions during the search. Dkt. 63-2 ¶ 12; dkt. 63-3 ¶ 9-10; dkt. 63-4 ¶ 10. And Captain Gard explains he wasn't even working that night. Dkt. 63-5 ¶ 8. Mr. Wright asserts in his response to the motion for summary judgment that he spoke to each of these defendants personally about his

9

concerns about Officer Dunn but he does not designate specific admissible evidence that he spoke to these specific defendants or what he said to them. *See* dkt. 69 at 26. This is not enough to contradict these defendants' affirmative testimony. *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up) (Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough."). Mr. Wright also affirms that these defendants were on the range during the time of the alleged harassment. Dkt. 1 at 12. But these defendants deny witnessing any alleged harassment by Officer Dunn and the parties agree that there were many officers on the range during this time. There is no designated evidence to allow a conclusion that these defendants were in the vicinity of Officer Dunn and Mr. Wright during the search at issue. Because Mr. Wright has not designated specific evidence that these defendants were aware of a risk of harm to him by Officer Dunn, these defendants are entitled to summary judgment.

### C. PREA Investigation

Finally, Mr. Wright contends that Mr. Denney performed the PREA investigation in a public manner to humiliate Mr. Wright and put him at risk of assault. This claim is proceeding under the Eighth Amendment and the Fourteenth Amendment's Equal Protection Clause because Mr. Wright contends that no similarly situated inmates have been treated in this manner.

#### 1. Eighth Amendment

Mr. Wright contends that Mr. Denney violated his rights by conducting the PREA interview in a public hallway. Mr. Denney argues that Mr. Wright refused to meet with him about his complaints against Officer Dunn and that he did not interact with him in the hallway.

"Prison authorities violate the Eighth Amendment when they treat inmates in a way that is motivated by a desire to harass or humiliate or intended to humiliate and cause psychological pain." *Chatman v. Ill. Dep't of Corr.*, 685 F. App'x 487, 489 (7th Cir. 2017). In response to the

motion for summary judgment, Mr. Wright explains that the interview took place in the "utility room," which he contends has glass windows through which passersby by can see and hear what is going on in the room. Dkt. 70 at 33. Mr. Wright provides little further details regarding the interview. Based on the facts designated by Mr. Wright, no reasonable jury could conclude that, assuming Mr. Joseph did interview him about Officer Dunn's actions in the utility room, this interview was done with the intent to harass or humiliate him and cause him psychological harm. Mr. Joseph is therefore entitled to summary judgment on this claim.

### 2. Equal Protection

"A plaintiff alleging a class-of-one-equal-protection claim must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Mr. Wright contends generally in his response to the motion for summary judgment that other inmates were treated differently than him. But he has not designated specific evidence to support this claim. *See Fares Pawn, LLC v. Indiana Dep't of Fin. Institutions*, 755 F.3d 839, 845 (7th Cir. 2014) ("Normally, a class-of-one plaintiff will show an absence of rational basis by identifying some comparator—that is, some similarly situated person who was treated differently."). Mr. Denney is therefore entitled to summary judgment on the equal protection claim.

### IV.
### Conclusion

The defendants' motion for summary judgment, dkt. [61], is **granted in part and denied in part**. The motion is **denied** as to Mr. Wright's claims that Officer Dunn violated Mr. Wright's Eighth Amendment rights by calling Mr. Wright a snitch and sexually harassing him during a strip search and his retaliation claim that Officer Dunn performed the search in a harassing manner

11

because he had filed a grievance against Officer Dunn. The motion is granted in all other respects. The **clerk shall terminate** defendants Davis, Denney, Gard, Joseph, and Krul on the docket.

The Court prefers that Mr. Wright be represented by counsel for the remainder of this action. The **clerk is directed** to send Mr. Wright a motion for assistance recruiting counsel with his copy of this Order. Mr. Wright has **through April 23, 2026**, to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed pro se. The magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

**IT IS SO ORDERED.**

Date: 3/23/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

CARLTON WRIGHT
208902
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com

12